just been talking about. We'll assume that you'll want to say at least all the same things in this case. Good morning. It's Christopher Stender again for the petitioner. I would resubmit those very same arguments that this, again, is a question. I think there is a factual distinction. There is. I was going to ask you about that because in the other case you're making the argument that but for the existence of the memo, the document would have been received in a different form. And here there's at least an argument that what caused the delay was the pendency of the asylum application and not anything else, and therefore that even assuming everything else, there's no prejudice that can be demonstrated. So what's your response to that argument? Well, I believe the Court's already dealt with that issue in a case recently which was submitted by the government. I believe it's Vasquez-Zavala. And we're not attaching any merit to the argument that because an asylum application form I-589 was filed, therefore any right attached or any rights vested with the petitioner because of the filing of the asylum application. No, but I guess the question is what is the reason for the initiation of proceedings after the April 1st date? Is there any connection to what you're claiming there's a connection to? I think the record does not speak to why or how or what decisions or choices were made by the government in seeking to institute proceedings, in this case after April 1st, 1997. But again, I would draw the Court's attention to that same memo by Chief Immigration Judge Krepke which locked out the filing of any charging document which was not a notice to appear after April 1st, 1997. Again, no discretion, no ability to accept charging documents which were, quite honestly, issued in the thousands and then rejected by immigration courts if they were filed or received after April 1st, 1997. And there was no ability to go forward with that. Counsel, do they have standing? Excuse me? Do they have standing here? The Petitioners? Yes. The Petitioners. Do they have standing? Yes. I believe we do have standing because, well, first of all, the Petitioners were put into immigration court proceedings and are subject to, obviously, deportation. There was an administrative record made in front of the immigration judge. It was appealed to the Board of Immigration Appeals and then duly and timely appealed to the Ninth Circuit Court of Appeals. I don't think there's any question that we have standing, not only to raise the APA issue. Am I wrong about this? They came here. They were non-immigrants. And they were to remain for a temporary period, not to exceed a certain length of time. And then they filed for asylum. Correct. Okay. And at no time, unless I'm misreading it, did they ever were classified as immigrants or came here as immigrants? Correct. Well, if they came here as immigrants, then, respectfully, they would not have to apply for cancellation, removal or suspension of deportation because if successful, that is what they received. They become lawful permanent immigrants of the United States. What they did is they entered on a non-immigrant visa and overstayed that visa and, therefore, violated their status, became illegal. The only difference between somebody who enters and then goes out of status by overstaying their visa and somebody who crosses initially illegally is just that there's a short or brief period of time when they're actually lawfully in the country with that non-immigrant visa. And they have no relatives here. Well, that is the distinction. That is the problem. In the second case, there are no qualifying relatives in order to qualify for cancellation or removal. You must have a spouse, parent or child who is a U.S. citizen or lawful permanent resident. This is a family that all of which are do not have a qualifying relative because they are all in proceedings together in an illegal status. Therefore, they cannot. The difference here between a suspension application is a suspension of deportation, they were eligible to apply for it because they could show hardship to self. They did not have to have a qualifying legal relative in the United States. For cancellation or removal purposes, that's one of the prerequisites in order to qualify. Are there any of the criteria that normally would follow that? Well, as far as cancellation is concerned, there's no. Any of the criteria? Well, they wouldn't. Yes. The whole family met the good moral character requirements. I would argue that they would have met the hardship requirements would they have been able to present that case, although we never got that far. They had a daughter born in 1988. The daughter was born in Mexico. And I think they tried to change the dates. They couldn't do that? I don't understand. They tried to change the date of birth? Well, they said that the date of birth was different than they determined it was 1988, which the child was born in Mexico. It's not born in the United States. Well, I think I would put forth. If I'm wrong about that, you correct me. No. I would put forth that in any case that fact is irrelevant because it wouldn't have made any difference whether or not they qualified for cancellation or removal. The date of birth of the child, the fact of the matter is all the family was born in Mexico and, therefore, there was no qualifying relative for cancellation or removal purposes. The date of birth wouldn't have made any difference whether it was one date or other. It just mattered where the child was born. If there's no further questions. You may reserve the rest of your time. Thank you. Thank you. Thank you very much. Mr. Cohen. Your Honors, once again, Jonathan Cohen representing the Attorney General, John Ashcroft. Your Honors, this is the a fortiori case. For all the reasons why you should affirm in the previous case, a fortiori should affirm here. In addition, there are two other reasons why affirmance is an order in this case. First of all, an order to show cause was not even served in this case. So even if there were an issue of whether service by self commences proceedings and it doesn't under Cortez-Philly, but even if that were an issue, it still would not be relevant here because in this case there was no order to show cause being served. The only thing that happened before the effective date was the filing by Petitioner of an asylum application. And this Court held in Vasquez that that does not commence proceedings. So there's no issue here about order to show cause. That's one reason, additional reason, why the Court should affirm in this case. The second is that Petitioner failed to exhaust the APA issue below, and thus this Court lacks subject matter jurisdiction. He didn't argue the APA issue to the agency, either to the immigration judge or the Board of Immigration Appeals. That issue was brought up the first time in his opening brief. And because he did not raise it below, he didn't exhaust, and this Court lacks jurisdiction over that claim. That's another reason why this Court should affirm, even if it wouldn't affirm the other case, which of course it should. If I may, I'd like to turn to the response that counsel gave at the beginning of his argument when he was talking about, in response to a question, about whether or not there was a void in the order to show cause. And there are two responses to that, Your Honor. First of all, there simply was no statutory authority to issue orders of show cause, to file orders to show cause after a year's effective date. That section of the U.S. Code no longer existed. It repealed that. The new charging document was the notice to appear. The order to show cause was an animal that was extinct. It simply no longer existed. But even if it did exist, even if you could say there's somehow a void and there's a power to issue this document that no longer existed, it really is irrelevant because that order to show cause would still be filed after the effective date. So even if you could file the OSC instead of the NTA, it would still be filed after the effective date. And under the regulations and all those decisions we talked about, Petitioner would still be subject to ARERA. So, again, the whole question of whether or not you could file an order to show cause is irrelevant because that filing would still be after the effective date, and thus ARERA would apply. In this case, like in the previous case, Petitioners have admitted they cannot meet the standard that ARERA created. And because Petitioner cannot meet that standard, and because ARERA clearly applies, this Court should affirm. If there are no other further questions. Judge Hall, do you have any questions? No questions. I don't believe we do either. Thank you. Thank you. Mr. Stender, you have a short, well, actually not so short amount of time remaining for rebuttal. Thank you very much. Well, in reply to the exhaustion question, we do not lack jurisdiction to proceed under the APA claim, because the Immigration Court, the Board of Immigration Appeals, are not empowered, do not have the authority to review APA claims. We could not have raised them. There would have been a moot point, and, therefore, I don't believe the exhaustion doctrine would apply to this case. I believe we do have standing to proceed on the APA violation. I would point out in the excerpts of record, a document was filed directing the Immigration Service to attempt to file orders to show cause as expeditiously as possible in order to commence proceedings. It's conjecture how that related to the Chief Judge's memo, but I would put forth that that is included in the excerpts of record, and that is a point that I believe the Court could look for as far as pointing out that the Immigration Service felt compelled to try to issue orders to show cause prior to April 1, 1997, not because the law required it, as the government argues, but because Chief Judge Krepke's memo said we will not accept these filings post-April 1, 1997. The statute does not require that IRA be applied to any case effective April 1, 1997 unless it's commenced on that date and a notice to appear is issued. Whether orders to show cause could have been written up and filed out for April 1, 1997, quite frankly, we don't know. But what we do know is there were orders to show cause which existed, which were issued and served upon parties, and then either were not filed or attempted to be filed and rejected after April 1, 1997. And we know this happened, or at least could have happened, because Chief Judge Krepke's memo refers to that. If that happens, these will be rejected for lack of the ability to file after April 1, 1997. No discretion. They were locked out and rejected. If there's no questions, I'll rest. I don't believe we do. Thank you very much. The case just argued is submitted. And we will next hear Grosvenor v. Washington, mutual bank.
judges: Hall, Graber, Weiner